UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS D. LANIER,

     Applicant,

v.                              CASE NO. 8:14-cv-323-SDM-TGW

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

     Lanier applies under 28 U.S.C. § 2254 for a writ of habeas corpus (Docs. 1 and 3) and challenges his conviction for perjury, for which Lanier is imprisoned for ten years.  Numerous exhibits ("Respondent's Exhibit ___") support the response. (Doc. 10)  The respondent admits the application's timeliness (Doc. 24 at 5) but argues that some grounds are unexhausted and procedurally barred.  (Doc. 24 at 10–12, 21–23, 28, 30–37, 50–51, 54–55)

## I. BACKGROUND[1]

     A prosecutor charged Michael Glenn with first-degree murder, armed robbery, and attempted armed robbery.  The charges arose from a homicide that occurred during a robbery of two persons attempting to buy drugs.  Before trial, Glenn notified the prosecutor that he intended to assert an alibi defense.  Glenn claimed that, when

_____

[1] This summary of the facts derives from the briefs on direct appeal (Respondent's Exhibits 2 and 3) and the trial transcripts.

the homicide had occurred, he had hosted a barbecue at his home and watched a football game on television.  Also, Glenn notified the prosecutor that he intended to call Lanier as a witness at trial.

Before trial, the prosecutor deposed Lanier.  After the deposition, Glenn, who was detained, telephoned Derrick Ellis, who telephoned Lanier.  During the three-way telephone call recorded by the jail, Glenn and Lanier spoke about Glenn's criminal case (Respondent's Exhibit 1b at 212–21)[2]:

> [Recording:]    Hello. This is [a] collect call from Hillsborough County Jail. To accept charges press — to refuse charges press one. Thank you for using T-Medix.
>
> Hello? What's up, (unintelligible). Hey man, I got (unintelligible) f*cked over, man. You got what? . . . What? I got the depo (unintelligible) got typed up. He came out here yesterday, um, the guy subpoenaed us. Hey, ah, you told him about the depo? No, I forgot to ask him. (Unintelligible) all right. (Unintelligible) f*ck, see what's going on (unintelligible).
>
> . . .
>
> Man, you supposed to tell him straight up, man, man. (Unintelligible) oh, man, you listen (unintelligible) you listen up. Man, this is my sh*t, and see what I said. (Unintelligible) you I didn't, man? Okay (unintelligible) you say I didn't say that. I did say that, bro. You was home doing house arrest, bro. (Unintelligible) football game (unintelligible) I know for a fact you didn't do that (unintelligible). Straight up. (Unintelligible) look at me. I (unintelligible) verify that up, man.

---

[2] The trial transcript does not identify the speakers on the recording, and the record contains no other transcript that identifies the speakers.

(Unintelligible) man. I got two charges (unintelligible). I fittin' to get ready to go to court at 1:30, man. Yeah. (Unintelligible) same time, you know what I'm saying? You put me down (unintelligible). You need to come up and step up, my man. They got me (unintelligible) they got me (unintelligible). Nick-nick, put me down on the schedule, I will come see you (unintelligible) I work from like six in the morning (unintelligible).

I really need you in court today, man. Bro, (unintelligible) know what's going on, bro. That's what I'm telling you. Lace me up. Lace me all the way up.

. . .

I said — I told — I told (unintelligible). Look, man, I fittin' to (unintelligible) and hear motions, man. To hear who? To hear my motions, man. (Unintelligible) illegally arrested for (unintelligible). You going to a motion, right? Go ahead, go ahead. Pre-trial and everything, man. (Unintelligible) ain't nothing (unintelligible) going for a motion, ain't it (unintelligible) pre-trial today (unintelligible) pre-trial today. (Unintelligible). Man, man, trial, you know what I'm saying? (Unintelligible) just put me on the schedule (unintelligible). Just [put] me down on the schedule tomorrow (unintelligible).

. . .

Trying to feed me to the wolves (unintelligible), don't nobody know that? (Unintelligible). Hey, all we have are dreams (unintelligible) other attorneys who [are] willing to take this case (unintelligible). Yeah. (Unintelligible) [took] my money, playing around with it, man. And I got charged — I got charged

— everybody else wants 25, 30, 40, 50. Now I got to trying [to] figure out (unintelligible) just for — just for get[ting] on my case. Then he tell me (unintelligible) he going to run with it all the way and get me cleared because he know I ain't do it. (Unintelligible) out to the wolves like that.

. . .

The subpoena only thing cover for you, man. (Unintelligible) listen, I talked to Morris before I left St. Pete (unintelligible). Morris (unintelligible) told me exactly what [to] say down here. Hey, look here now, man, check this out, man. (Unintelligible). Look (unintelligible) pre-trial (unintelligible) you could be, you know what I'm saying (unintelligible) a good witness for me, man. (Unintelligible) *Miranda* rights and all that junk, man. You can't just show up in court like that (unintelligible) you hear me? You got to be subpoenaed or you got to be on the docket or something, bro. I just can't show up, walk in there and be, like, "Yeah, yeah, this is really what happened." [It] don't go like that.

. . .

I told them exactly what the game plan was, you dig? Yeah, man. I just told him, look, I wasn't able to make it out there to your house to watch the game (unintelligible) b*tch, you dig? I seen that there, man. I seen everything, man. . . . And I ain't got no attorney, man. You (unintelligible) big conspiracy, dog. I'm playing up against the State, man. All them all against me, man. That's why I ain't (unintelligible) gather facts on my behalf, man. Right, my man, right, my man. I'm *pro se*. I'm representing myself, man. I got stand-by counsel and an investigator, but I'm *pro se* right now.

. . .

> [Y]ou don't really know too much about
> the law like that, bro. Man, (unintelligible)
> I know enough about the law, man.
> (Unintelligible) I know these people
> playing games with me, man. They won't
> give me no good attorney who really
> (unintelligible) go out there today. You
> got to get you [ ] a lawyer. Hey, man, I'm
> going to get back at you, man. All right,
> blood. Hey, I love you (unintelligible). . . .

During the recorded telephone call, Lanier spoke with Glenn about Glenn's former attorney, who withdrew because of a conflict but kept the fee that Glenn paid, and about Mark Moore, the cousin of Martin Moore, who planned to testify on behalf of Glenn at trial. Lanier told Glenn, "I already talked to Mark. He laced me up." Lanier asked Glenn to "put [him] on the viso," which meant the visitation list at the jail. Also, Lanier advised Glenn, "You need to talk to your lawyer," and told him, "Get your lawyer to subpoena me."

During the murder trial, Glenn represented himself, and Lanier testified on behalf of the defense. Lanier testified that he prepared meat for the barbecue but denied attending the barbecue and denied knowing if Glenn remained at the barbecue when the homicide occurred. On cross-examination, Lanier further denied that he spoke with Glenn on the telephone about Glenn's criminal case (Respondent's Exhibit 1b at 225–29):

> [Prosecutor:]   Have you ever talked to Mr. Glenn about his case?
>
> [Lanier:]   Not really.

| | |
|---|---|
| [Prosecutor:] | You never talked to — you never talked to him on the phone about his case? |
| [Lanier:] | No, not really. I went to see him one time. When you locked up like that you try and keep your case in there, man. What's going on in the outside world, it really is irrelevant. |
| [Prosecutor:] | Mr. Lanier, have you ever talked to Mr. Glenn? |
| [Lanier:] | I just told you. |
| . . . | |
| [Prosecutor:] | It is simply a yes or no question. Have you ever talked to Michael Glenn on the phone about his case? |
| [Lanier:] | No. |
| . . . | |
| [Prosecutor:] | You said no, correct? |
| [Lanier:] | Have I ever talked to him about his case? No. |
| [Prosecutor:] | Have you ever talked to Mr. Glenn on the phone? |
| [Lanier:] | What do you mean, like a phone call conversation? |
| [Prosecutor:] | Yes. |
| [Lanier:] | Yeah. |
| [Prosecutor:] | How many times when he was in jail? |
| [Lanier:] | Maybe like once or twice. I just got out of prison. I've been gone myself. |
| [Prosecutor:] | What did you talk about on the phone? |
| [Lanier:] | Good to see you. Glad I'm home, man. |

. . .

| | |
|---|---|
| [Prosecutor:] | Did Mr. Glenn ever talk to you on the phone and get mad at you because you wouldn't verify that he was at the barbecue? |
| [Glenn:] | Plead the Fifth. |
| [Lanier:] | Plead the Fifth. |
| [Prosecutor:] | Excuse me? You mean you're pleading the Fifth Amendment? |
| [Lanier:] | Yeah, I'm pleading the Fifth, tada, tada, tada (stutter). |
| [Prosecutor:] | Isn't it a fact Mr. Glenn wanted you to say you were at the barbecue and that you saw him there? |
| [Lanier:] | I plead the Fifth. |

After Lanier denied that he had spoken with Glenn about Glenn's criminal case, the

prosecutor introduced into evidence the recorded telephone call to impeach Lanier.

(Respondent's Exhibit 1b at 250–51)

An information charged Lanier with perjury for his testimony during Glenn's

trial.  Lanier exercised his right to a jury trial.  At the perjury trial, Lanier testified in

his own defense.  Lanier testified that during Glenn's trial he felt frustrated and

nervous.  Lanier claimed that he did not believe that he had discussed Glenn's

criminal case with Glenn because Glenn mostly spoke during the telephone call.

Lanier claimed that he truthfully responded, "not really," when the prosecutor asked

him if he had spoken with Glenn about Glenn's case.  During the telephone call,

Lanier wanted Glenn to know that he supported Glenn.  Lanier further claimed that

his testimony during Glenn's trial was not material because his testimony did not support an alibi.  Lanier contended that he asserted his right against self-incrimination under the Fifth Amendment because he did not understand the prosecutor's questions.

## II.  <u>COGNIZABILITY, EXHAUSTION, AND PROCEDURAL DEFAULT</u>

The respondent argues that ground one, a sub-claim in ground two, ground four, ground five, ground six, ground seven, ground eight, and ground nine are procedurally barred from federal review because Lanier failed to exhaust the claims. (Doc. 24 at 10–12, 21–23, 28, 30–37, 50–51, 54–55)  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citing *Henry*, 513 U.S. at 365–66).

**<u>Ground One:</u>**

Lanier asserts that trial counsel was ineffective for not arguing in an expanded motion for judgment of acquittal that the prosecutor failed to prove that the recorded telephone call contained Lanier's voice.  (Doc. 1 at 5–6)  Lanier raised this claim as ground four in his motion for post-conviction relief and as issue four in his brief on

post-conviction appeal.  (Respondent's Exhibit 6 at 42–45 and Exhibit 7 at 14–15)  In both his motion and his appellate brief, Lanier cited *Strickland v. Washington*, 466 U.S. 668 (1984).  (Respondent's Exhibit 6 at 42 and Exhibit 7 at 6)  Ground one is exhausted.[3]

**Ground Two:**

Lanier asserts that trial counsel was ineffective for not objecting during trial to the admission of a trial court docket sheet because the prosecutor violated the rules governing discovery by failing to disclose the document before trial.  (Doc. 1 at 7) ("Ineffective Assistance of Counsel Claim")  He further asserts that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the document to the defense before trial.  (Doc. 3 at 13–14) ("*Brady* Claim")

The respondent asserts that the *Brady* claim is unexhausted and procedurally barred.  (Doc. 24 at 21–22)  Lainer raised the *Brady* claim in neither his brief on direct appeal, nor his motion for post-conviction relief, nor his brief on post-conviction appeal.  (Respondent's Exhibit 2, Exhibit 6 at 39–40, and Exhibit 7 at 11–12)  Lanier is barred from raising the *Brady* claim in a successive Rule 3.850 motion.  Fla. R. Crim. P. 3.850(b), (h).  The *Brady* claim in ground two is unexhausted.

---

[3] The respondent argues that the ground is procedurally barred because the State of Florida asserted that Lanier raised an unpreserved claim on post-conviction appeal. (Doc. 24 at 10–11) The State of Florida contended that Lanier asserted for the first time on appeal that trial counsel was ineffective for not arguing that the prosecutor failed to present eyewitness testimony and physical evidence to prove guilt. (Respondent's Exhibit 8 at 28) Because Lanier does not present that claim in Ground One, the State of Florida's assertion of lack of preservation on post-conviction appeal does not bar federal review. (Docs. 1 at 5–6 and 3 at 8–12)

**Ground Four:**

Lanier asserts that trial counsel was ineffective for not objecting to an irrelevant and inflammatory question by the prosecutor during the cross-examination of Lanier about his insulting behavior toward a woman named Georgia Peach. (Doc. 1 at 11)  Lanier raised this claim as ground three in his motion for post-conviction relief and as issue three in his brief on post-conviction appeal. (Respondent's Exhibit 6 at 40–42 and Exhibit 7 at 12–14)  In both his motion and his appellate brief, Lanier cited *Strickland*.  (Respondent's Exhibit 6 at 41 and Exhibit 7 at 6)  Ground four is exhausted.

**Ground Five, Ground Six, Ground Seven, and Ground Eight:**

In ground five Lanier asserts that the trial court violated his federal right to due process because the prosecutor failed to prove that the recorded telephone call contained Lanier's voice and that Lanier's testimony during Glenn's trial was false. (Docs. 1 at 12–13 and 3 at 25–30)  In ground six Lanier asserts that the trial court violated his federal right to due process because the prosecutor failed to prove that Lanier's testimony during Glenn's trial was material.  (Docs. 1 at 15 and 3 at 31 at 34)  In ground seven Lanier asserts that the trial court violated his federal right to due process during trial by admitting into evidence transcripts of Lanier's deposition in Glenn's case.  (Docs. 1 at 16– 17 and 3 at 35–37)  In ground eight Lanier asserts that the trial court violated his federal right to due process during trial by admitting evidence that he insulted Georgia Peach.  (Docs. 1 at 18–19 and 3 at 38–40)

Lanier presented similar claims as four issues on direct appeal but presented

those issues under state law and not as the violation of a federally protected right. (Respondent's Exhibit 2)  The failure to alert the state appellate court of the claim that the trial court violated a federally protected right fails to meet the exhaustion requirement.  *Henry*, 513 U.S. at 366 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); *Preston v. Sec'y, Fla. Dep't Corrs.*, 785 F.3d 449, 460 (11th Cir. 2015) ("[S]imply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts.").

In support of a sufficiency-of-the-evidence claim similar to the federal due process claim in ground five of his federal petition, Lanier cited *Bronston v. United States*, 409 U.S. 352 (1973), and *United States v. Michael*, 17 F.3d 1383 (11th Cir. 1994), in his brief on direct appeal.  (Respondent's Exhibit 2 at 25–26)  However, *Bronston*, 409 U.S. at 357, construed the federal statute criminalizing perjury, and *Michael*, 17 F.3d at 1385, reviewed a federal due process claim based on a prosecutor's presentation of false testimony during trial.  In ground five Lanier asserts a federal due process claim based on the sufficiency of evidence.  (Doc. 1 at 12–13)  *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) ("[An] applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.").  Because Lanier neither mentioned nor argued the standard governing a federal due

process claim based on the sufficiency of evidence in his brief on direct appeal, he failed to fairly present the federal claim.  (Respondent's Exhibit 2 at 25–26)  *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) ("We therefore hold that '[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'") (quoting *Kelley v. Sec'y, Dep't Corrs.*, 377 F.3d 1317, 1345 (11th Cir. 2004)).  Ground five, ground six, ground seven, and ground eight are unexhausted.

**Ground Nine:**

In ground nine Lanier asserts that fundamental error arose from the admission of testimony by a witness who opined on Lanier's guilt and compared Lanier's conduct to conduct by other witnesses who committed perjury.  (Docs. 1 at 20 and 3 at 41–44)  In a memorandum, Lanier supports the claim with citations to opinions by federal courts of appeal and the United States Supreme Court reviewing federal due process claims based on prosecutorial misconduct.  (Doc. 3 at 41–44)

A fundamental error claim asserts a violation of state law.  *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1299 (11th Cir. 2017).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (citation omitted).  Because the fundamental error claim in ground nine does not assert the violation of a

federally protected right, the claim is not cognizable in federal court.

Also, in his brief on direct appeal, Lanier raised the fundamental error claim and asserted in the last paragraph of his brief that the admission of the testimony "denied [ ] his rights to due process and to a fair trial under the United States and Florida Constitutions." (Respondent's Exhibit 2 at 35–36)  Because Lanier neither mentioned nor argued in his brief on appeal the standard governing a federal due process claim based on the improper admission of evidence, he failed to fairly present a federal claim.  (Respondent's Exhibit 2 at 35–36)  *McNair*, 416 F.3d at 1303.  *See Blackburn v. State of Ala.*, 361 U.S. 199, 206 (1960) ("[T]he Fourteenth Amendment forbids 'fundamental unfairness in the use of evidence whether true or false.'") (citation omitted); *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) ("The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical, highly significant factor.'") (citation omitted).  Lanier's reference to his federal rights in the last paragraph of his brief did not suffice.  (Respondent's Exhibit 2 at 36)

The *Brady* claim in ground two, ground five, ground six, ground seven, ground eight, and ground nine are barred from federal review absent a showing of either "actual cause and prejudice" or a "fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Lanier proffers no specific facts to establish either.  Consequently, the *Brady* claim in ground two, ground five, ground six, ground seven, ground eight, and ground nine

are procedurally barred from federal review.

## III.  <u>STANDARD OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 governs this

proceeding.  *Wilcox v. Fla. Dep't Corrs.*, 158 F.3d 1209, 1210 (11th Cir. 1998).  Section

2254(d), which creates a highly deferential standard for federal court review of a state

court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim —
>
>> resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential

standard:

> In sum, § 2254(d)(1) places a new constraint on the power of
> a federal habeas court to grant a state prisoner's application for
> a writ of habeas corpus with respect to claims adjudicated on
> the merits in state court. . . . Under the "contrary to" clause,
> a federal habeas court may grant the writ if the state court
> arrives at a conclusion opposite to that reached by this Court on
> a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable
> facts. Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the
> correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's
> case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Cone*, 535 U.S. at 694.  "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues an explanatory and reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if they are reasonable.  *Wilson v. Sellers*, 138 S. Ct. 1188,

1192 (2018).  When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning."  *Wilson*, 138 S. Ct. at 1192.  A respondent may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ."  *Wilson*, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court affirmed the denial of Lanier's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 10)  A state appellate court's *per curiam* decision without a written opinion warrants deference under Section 2254(d)(1).  *Wright v. Sec'y, Dep't Corrs.*, 278 F.3d 1245, 1254 (11th Cir. 2002).  *Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  Lanier bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The presumption applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).  Lanier's federal application presents the same grounds that he presented to the state court.  The state court's rejection of Lanier's claims warrants deference in this federal action.  (Respondent's Exhibit 6 at 72–83 and Exhibit 6a at 436–38)

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Lanier claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
> > First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second,

> the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Lanier must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 691.  To meet this burden, Lanier must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Lanier cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful.  *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d) is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In denying Lanier's Rule 3.850 motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 6 at 73–74)  Because the state court rejected the grounds based on *Strickland*, Lanier cannot meet the "contrary to" test in Section 2254(d)(1).  Lanier instead must show that the state court either unreasonably applied *Strickland* or unreasonably determined a fact.  In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable.  *Putman v. Head*, 268 F.3d 1223, 1244 n.17

(11th Cir. 2001).  The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

## A.  Grounds of IAC Before and During Trial

### Ground One:

Lanier asserts that trial counsel was ineffective for not arguing in an expanded motion for a judgment of acquittal that the prosecutor failed to prove that the telephone call recorded by the jail contained Lanier's voice.  (Doc. 1 at 5–6)  The post-conviction court denied the claim as follows (Respondent's Exhibit 6 at 82–83) (state court record citations omitted):

> . . . Defendant alleges ineffective assistance of counsel for failure to move for an adequate judgment of acquittal. Specifically, Defendant contends that counsel should have moved for a judgment of acquittal on the basis that the State's evidence was insufficient to establish that Defendant was one of the speakers on the three-way call. More specifically, Defendant contends that the only evidence presented to suggest that Defendant was one of the three speakers on the call was [testimony by] Assistant State Attorney Covington who was not a voice-recognition expert or a party to the conversation. Because the evidence was insufficient to establish that Defendant had been one of the speakers [on] the call, Defendant contends, counsel should have argued such in an adequate motion for judgment of acquittal at the close of the State's evidence. Had counsel argued such, Defendant contends, there is a reasonable probability the judgment of acquittal would have been granted, thereby affecting the outcome of Defendant's trial, or alternatively, this issue would have been preserved for appeal.
>
> The Court notes that voice recognition testimony is admissible as positive proof of identity. *See England v. State*, 940 So. 2d 389, 401 (Fla. 2006). Moreover, such recognition testimony may be offered through lay witnesses, and does not require a voice recognition expert or party to the conversation. *See State v. Benton*, 567 So. 2d 1067, 1068 (Fla. 2d DCA 1990) (noting that

> "[a] lay witness may offer his opinion about the identification
> of another person, including identification of a voice"). In the
> present case, there was witness testimony identifying Defendant
> by voice. The Court finds there was sufficient evidence at trial
> to establish that Defendant had been identified by voice as a
> speaker [on] the call, and thus there was no valid basis for a
> motion for judgment of acquittal on that basis. Additionally,
> the Court finds that, even if such a motion had been argued by
> counsel, it would not have been granted based on the evidence
> presented at trial, and thus Defendant cannot show a
> reasonable probability that the outcome of his trial would have
> been different but for counsel's failure to raise this argument in
> his motion for judgment of acquittal. For these reasons, the
> Court finds that counsel cannot be deemed deficient under
> these circumstances as alleged, nor can Defendant demonstrate
> prejudice as a result [of] this alleged deficiency. Consequently,
> Defendant warrants no relief on this claim . . . .

Whether a lay witness may identify a voice on a recording is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("The federal courts must defer to a state court's interpretation of its own rules of evidence and procedure."). "When a witness is previously familiar with a defendant, they are permitted to identify the voice of the defendant as a lay witness." *Johnson v. State*, 252 So. 3d 1114, 1117 (Fla. 2018). "[A] familiarity with a defendant's voice acquired during an ongoing investigation may constitute the requisite prior special familiarity for voice identification testimony." *Johnson*, 252 So. 3d at 1118. *See also State v. Cordia*, 564 So. 2d 601, 602 (Fla. 2d DCA 1990) (holding that "witnesses [who identify the defendant] should be *either* eyewitnesses or else capable of independently identifying the individual from photographs, tape recordings, or similar evidence.") (italics in original).

At the perjury trial, a prosecutor from Glenn's case identified Lanier's voice after listening to hundreds of recorded telephone calls and deposing Lanier (Respondent's Exhibit 1b at 206–11):

| | |
|---|---|
| [Prosecutor:] | Now, sir, you talked about listening to this jail call. For this particular case, did you only listen to one jail call? |
| [Witness:] | I listened to hundreds of jail calls, and they were all provided to the defendant at that time, Mr. Glenn. |
| [Prosecutor:] | About how long would say you spent listening [to] these jail calls? |
| [Witness:] | Hours and hours and hours. These jail calls could be a maximum of twenty minutes and I believe each jail call was very close to twenty minutes long. |
| . . . | |
| [Prosecutor:] | My point about this is did there come a time when you were actually able to recognize voices and people on these calls? |
| [Witness:] | Yes. |
| [Prosecutor:] | Are you or were you able to recognize Mr. Glenn's voice himself? |
| [Witness:] | I was intimately familiar with Mr. Glenn's voice. |
| [Prosecutor:] | This particular jail call that we've been talking about, you said that it was a three-way call? |
| [Witness:] | Yes. |
| [Prosecutor:] | What does that mean? |
| [Witness:] | That means Mr. Glenn called the individual by the name of Derrick Ellis, |

- 22 -

I believe he's referred to as Little D, and he asked Little D to get him in touch with Mr. Lanier, and I don't know how [you do] it, you do something on the phone that allows you to talk to three people at the same time.

[Prosecutor:] Do you recognize the person that Mr. Glenn initially called, Derrick Ellis?

[Witness:] Yes, I had heard calls with Mr. Ellis before.

[Prosecutor:] So are you and were you able to distinguish between Glenn's friend [and] who this Little D was, [that] this is this person calling?

[Witness:] Yes. And he would always basically refer to them by name, something like that.

[Prosecutor:] Do you become familiar with the way that Mr. Glenn would speak?

[Witness:] Yes.

[Prosecutor:] And did he ever use slang, certain terms and slang and things like that?

[Witness:] Yes.

[Prosecutor:] Mr. Glenn's vocabulary?

[Witness:] Yes.

. . .

[Prosecutor:] And the date of that call, do you recall when that call was made?

[Witness:] I know it was after Mr. Lanier's deposition. I believe it was in August of 2005.

. . .

| | |
|---|---|
| [Prosecutor:] | After listening to that jail call, can you determine who was on that call? |
| [Witness:] | Mr. Glenn made the call from jail. Yes, I can determine that. |
| [Prosecutor:] | Who — who were the players on that call? |
| [Witness:] | Mr. Glenn made a call — made the call from jail to Little D, Derrick Ellis, who made a three-way call to Nino or Nicholas Lanier. |

The trial court overruled trial counsel's objection to the admission of the recorded telephone call as follows (Respondent's Exhibit 1b at 191–92):

| | |
|---|---|
| [Judge:] | While we're at it, why don't we go ahead and discuss the contents of the jail call. What are your objections, Mr. Ragano, to [the] contents, *i.e.*, transcript of this jail call? |
| [Trial counsel:] | Yes, Your Honor. The contents of the jail call — first of all, Michael Glenn is one of the assumed — one of the speakers on the jail call, hearsay, number one with Michael Glenn; number two, as Ms. Silver pointed out, it's very hard to decipher who is what, identifying the role of which speaker. I can't even tell where my client is on the jail call. So, I object to hearsay, I object to it's prejudicial, it's misleading, it's confusing. And as to proving up, I'm not sure how they're going to prove up who is actually — as far as authenticating who the speaker is because I never met Mr. Glenn in my life. I don't know who he is, and I can't tell who Mr. Lanier is on the phone call, the jail calls. So those are my objections in a nutshell, Your Honor. |
| [Judge:] | All right, hearsay as to Mr. Glenn overruled. Mr. Glenn is not on trial and so — |

| | |
|---|---|
| [Trial counsel:] | It does go to the truth of the matter asserted, specifically in the amended information, "Have you ever talked to Mr. Glenn on the phone about his case?" |
| [Judge:] | Overruled. |
| [Trial counsel:] | I guess Your Honor would have to hear it *in camera* to really understand what my problem — |
| [Judge:] | Oh, I understand your problem. I'm already thinking ahead. Your client's going to take the stand. |
| [Trial counsel:] | Yes. And then they can use that, obviously. |
| [Judge:] | Yes. |
| [Trial counsel:] | I know what they're going to do. |
| [Judge:] | The other objections are overruled as well at this point. . . . Clearly, the finder of fact has the responsibility to make conclusions, reach conclusions. Those conclusions remain entirely subject to their discretion. There may be confusing aspects as to who is speaking at times. That is for the jury to determine. That goes to the weight to be afforded the evidence, not the admissibility itself at this time. . . . |

When moving for a judgment of acquittal, a defendant "'admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.'" *Reynolds v. State*, 934 So. 2d 1128, 1145 (Fla. 2006) (citation omitted).[4]  The witness

---

[4] At the perjury trial, Lanier testified and admitted that he spoke with Glenn during the telephone call. (Respondent's Exhibit 1b at 265) However, "'[t]he State may not rely on evidence presented in the defense's case to supply the missing elements necessary to prove its case.'" *Rodriguez v. State*, 335 So. 3d 168, 171 (Fla. 3d DCA 2021) (citation omitted).

identified Lanier's voice after listening to hundreds of telephone calls and deposing Lanier. *Johnson*, 252 So. 3d at 1118.  Because the witness competently testified that the recorded telephone call contained Lanier's voice, a motion for judgment of acquittal would not succeed, and the post-conviction court did not unreasonably deny the claim. *Meders v. Warden, Ga. Diag. Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained.").  Ground one is denied.

**Ground Two:**

Lanier asserts that trial counsel was ineffective for not objecting during trial to the prosecutor's use of a trial court docket sheet to refresh a witness's recollection because the prosecutor violated the rules governing discovery by failing to disclose the document before trial.  (Doc. 1 at 7)  The post-conviction court denied the claim as follows (Respondent's Exhibit 6 at 75–78) (state court record citations omitted):

> . . . Defendant alleges ineffective assistance of counsel for failure to object to a discovery violation. Specifically, Defendant contends that, at trial, "the State introduc[ed] a copy of a computer record case management system's document regarding the case events of outgoing calls made by murder-Defendant Glenn in which was alleged to have been made to the Defendant through another party on the date in question." Although counsel objected on the grounds that he had never seen the document before, resulting in the court allowing use of the evidence to refresh the State's witness's recollection only as to the date of the jail call, Defendant contends that counsel should have objected to the State's discovery violation for failure to provide such to the defense in a timely manner, and should have moved for a *Richardson*[5] hearing, which would have resulted in further inquiry by the court. But for counsel's deficiencies, Defendant contends this issue would have been

---

[5] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

preserved for appeal or there is a reasonable probability that the outcome of Defendant's trial would have been different.

The Court first notes that Defendant is alleging that counsel's alleged deficiency prejudiced Defendant because, but for the alleged deficiency, this issue would have been preserved for appeal. A defendant alleging such, however, is unable to demonstrate the necessary prejudice under *Strickland*. *See Strickland*, 466 U.S. [ ] at 686–87. Specifically, a defendant alleging ineffective assistance of counsel for failure to raise an objection and thus failure to preserve the issue for appeal cannot demonstrate the necessary prejudice for relief on such an allegation. *See Diaz v. State*, 980 So. 2d 1275, 1278 (Fla. 4th DCA 2008) (explaining that focus on the prejudice prong of *Strickland* in motions for post-conviction relief "is on the effect of defense counsel's deficient performance on the original trial outcome, and not on whether the defendant could have prevailed on appeal if an objection had been raised"). "The prejudice in counsel's deficient performance is assessed based upon its effect on the results at trial, not on its effect on appeal." *Strobridge v. State*, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009); *see e.g.*, *Carratelli v. State*, 961 So. 2d 312, 323 (Fla. 2007). As Defendant cannot demonstrate prejudice as a result of counsel's alleged deficiency, Defendant warrants no relief on this portion of his allegation [ ].

As to his implied assertion that counsel's alleged deficiency prejudiced Defendant by affecting the outcome of his trial, the Court disagrees. Specifically, this Court does not find there to be a reasonable probability that the outcome of Defendant's trial would have been different had counsel continued to object to the use of the case management system's document on the basis of an alleged discovery violation. A review of the record reflects that, at trial, the State used a copy of a case management system's document to refresh a witness's recollection about a date, and defense counsel objected on the basis that he had not yet seen the document:

| [Prosecutor:] | And the date of that call, do you recall when that call was made? |
| [Witness:] | I know it was after [Defendant's] deposition. I believe it was in August of 2005. |
| [Prosecutor:] | Do you recall if that call was made on the pre-trial conference date? |

| | |
|---|---|
| [Witness:] | Yes, it was made on the pre-trial conference date . . . . |
| [Prosecutor:] | Would looking at the copy of the case system's document regarding the case events help you recall [when] the jail call [ ] was made? |
| [Witness:] | It might. |
| [Trial counsel:] | I object, Your Honor, I have not seen that particular document. |
| [Judge:] | This particular evidence is marked as what? |
| [Prosecutor:] | It's marked as evidence, Judge. I'm using it merely to attempt to refresh a witness's recollection. |
| [Judge:] | Well, has Mr. Covington identified any document that might refresh his recollection with respect to this very point? . . . Mr. Covington, is there any document that would in some form or fashion refresh your recollection as to the date of this conversation that's on this CD? |
| [Witness:] | Your Honor, [the State] asked me about a specific trial date. Yes, there's a specific pre-trial date. This document would probably refresh my recollection as a record that we keep in our office. |
| [Court:] | Very good. Let's mark this document identified. Show it to [trial counsel] and then proceed. |
| [Prosecutor:] | Your Honor, may I approach the witness? |
| [Judge:] | You may. |

| [Prosecutor:] | It's pre-marked for identification purposes as State's Exhibit 6-A. Mr. Covington, if you could just look at that document and see whether it refreshes your recollection. |
| --- | --- |
| [Witness:] | Okay. |
| [Prosecutor:] | Does it refresh your recollection? |
| [Witness:] | Yes. |
| [Prosecutor:] | What was the date that jail call was made? |
| [Witness:] | I believe it's August 23rd of 2005. |

The Court finds that counsel raised an adequate objection to the use of this evidence, and finds that further objection and argument that this amounted to a "discovery violation" was unwarranted under these facts. In Defendant's trial, when a witness stated that a particular phone call occurred "in August of 2005," the State used a copy of a case management system's document to refresh that witness's recollection only as to the specific date, "August 23rd of 2005." Defense counsel objected on the basis of not having previously seen this document, and this Court does not find there to be a reasonable probability that the outcome of Defendant's trial would have been different had counsel continued to object to this alleged discovery violation and sought a *Richardson* hearing on this basis. *See e.g.*, *Wuornos v. State*, 644 So. 2d 1000, 1006 (Fla. 1994); *Wilson v. State*, 789 So. 2d 1127, 1130 (Fla. 2d DCA 2001). Consequently, Defendant cannot demonstrate prejudice, nor does the Court find counsel to have been ineffective as alleged. As such, Defendant warrants no relief on this allegation [ ].

In his post-conviction motion, Lanier did not allege prejudice under *Strickland* to support his claim (Respondent's Exhibit 6 at 40) (citations omitted):

Florida courts [have] long held when a defendant fails to timely object to a discovery violation or request a *Richardson* hearing, the defendant does not preserve the point for appellate review. It is essential that the defendant either raise a timely objection or request a hearing to allow the trial court to specifically rule on the issue. Under these facts, the trial court was hardly given

adequate notice [of] a discovery violation by defense counsel.
But for counsel's failure, the court would have been obligated to
conduct a further inquiry.

Because Lanier failed to allege that "there [was] a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been

different," the post-conviction court did not unreasonably apply *Strickland*.

*Strickland*, 466 U.S. at 694.  *Daniel v. Comm'r, Ala. Dep't Corrs.*, 822 F.3d 1248, 1260

(11th Cir. 2016) ("Summary dismissals [for failure to state a claim] are adjudications

on the merits and subject to AEDPA review.") (citing *Borden v. Allen*, 646 F.3d 785,

808 (11th Cir. 2011)).

Also, whether an objection under *Richardson* would succeed is an issue of state

law, and a state court's determination of state law receives deference in federal court.

*Machin*, 758 F.2d at 1433.  Rule 3.220(b)(1)(K), Florida Rules of Criminal Procedure,

requires the prosecutor to timely disclose to the defense "any tangible papers or

objects that the prosecuting attorney intends to use in the hearing or trial and that

were not obtained from or that did not belong to the defendant."

"A *Richardson* hearing is required when there is a *possible* discovery violation in

order to flesh out whether there has indeed been a discovery violation."  *Joseph*

*v. State*, 336 So. 3d 218, 231 (Fla. 2022) (citation and internal quotation marks

omitted and italics in original).  "During a *Richardson* hearing, the trial court must

inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial

or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation."

*Andres v. State*, 254 So. 3d 283, 293 (Fla. 2018) (citation and internal quotation marks omitted).

During trial, the prosecutor from Glenn's case could not remember the exact day when the jail recorded the telephone call.[6] (Respondent's Exhibit 1b at 209) The prosecutor testified that the recording of the telephone call coincidentally occurred on the date when the attorneys attended a pre-trial conference. (Respondent's Exhibit 1b at 209) The prosecutor refreshed his recollection by reviewing a "copy of the case management system's document regarding the case events," that is, a trial court docket sheet. (Respondent's Exhibit 6b at 209) After reviewing the docket sheet, the prosecutor testified that the jail recorded the telephone call on August 23, 2005. (Respondent's Exhibit 6b at 210–11)

Because the prosecutor in Lanier's case did not anticipate the need to use the docket sheet to refresh the witness's recollection, the prosecutor's failure to disclose the document before trial was inadvertent. *Delhall v. State*, 95 So. 3d 134, 161–62 (Fla. 2012) ("[D]efense counsel's explanation for not providing the booking sheet in discovery was essentially that he could not have anticipated that the State would demand evidentiary proof of the jail stay when Wadada was on the witness stand. Thus, it appears that even though defense counsel could have provided the booking sheet prior to Delhall's testimony, counsel's failure to do so was not clearly shown to be willful nondisclosure."). Also, because the prosecutor did not introduce the

_____

[6] At trial, the parties stipulated to the authentication of the telephone call recorded by the jail. (Respondent's Exhibit 1b at 189–91)

docket sheet into evidence and instead only used the docket sheet, which was a public record available to both parties, to refresh the witness's recollection, a discovery violation was trivial.  § 90.202, Fla. Stat.  *Delhall*, 95 So. 3d at 162 ("[I]n light of the nature of the document sought to be introduced — a simple booking sheet that the prosecutor could easily verify — the violation was not shown to be substantial.").

Also, in his post-conviction motion, Lanier failed to allege facts demonstrating that the prosecutor's failure to timely disclose the docket sheet prejudiced the preparation of his defense.  (Respondent's Exhibit 6 at 39–40)  *State v. Schopp*, 653 So. 2d 1016, 1020 (Fla. 1995) ("[T]he defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant.").

Lanier failed to explain how he would have prepared for trial differently if the prosecutor had timely disclosed the docket sheet.  Also, even before refreshing his recollection with the docket sheet, the prosecutor in Glenn's case testified that the jail recorded the telephone call on "August of 2005."  (Respondent's Exhibit 1b at 209)  "The State [is] not required to prove that the crime took place on the exact dates listed in the information, as that is not an element of the offense."  *Bettey v. State*, 244 So. 3d 364, 367 (Fla. 1st DCA 2018).  Proof of the date of the offense suffices if the evidence proves that "the crime was committed before the information was filed and

within the period of the statute of limitations." *S.B. v. State*, 392 So. 2d 592, 592 (Fla. 2d DCA 1981). Testimony that the crime occurred on "August of 2005" sufficiently proved that Lanier committed the crime both before the prosecutor filed the information on June 14, 2006 and within the three-year statute of limitation for the second-degree felony. (Respondent's Exhibit 1 at 12–15) § 837.02(2) and 775.15(2)(b), Fla. Stat.

Because Lanier failed to allege facts in his post-conviction motion demonstrating a reasonable probability that an objection under *Richardson* would succeed and that the outcome at trial would change, the post-conviction court did not unreasonably deny the claim. *Strickland*, 466 U.S. at 694. *Conahan v. State*, 118 So. 3d 718, 727 (Fla. 2013) ("Even if Mrs. Montgomery's testimony was stricken after a *Richardson* hearing, the outcome would have been the same and confidence is not undermined because there was other evidence linking the victim and Conahan, such as the testimony of Whitaker and Newman."). Ground two is denied.

## Ground Three:

Lanier asserts that trial counsel was ineffective for not adequately advising him before he rejected the prosecutor's plea offer. (Doc. 1 at 9) The post-conviction court denied the claim as follows (Respondent's Exhibit 6c at 436–38) (state court record citations omitted):

> . . . Defendant alleges ineffective assistance of counsel for misadvising [or] misinforming Defendant, inducing him to reject a favorable plea offer. Specifically, Defendant contends that counsel misadvised or misinformed Defendant about the evidence in this case, inducing him to proceed to trial and reject the State's sixty-month offer [ ]. More specifically, Defendant

contends that he had been a defense witness in a separate first-degree murder trial in which he provided sworn testimony that he and the defendant in that case, Michael Glenn, had not discussed Glenn's case prior to the trial. Defendant contends further that the State then charged Defendant with having committed perjury in that capital proceeding.

The primary evidence against Defendant, he contends, was a recorded jail conversation between Defendant and Glenn. Defendant contends that counsel provided Defendant with a CD copy of the recorded call, and that, after listening to it, Defendant asked counsel several times if it constituted a "discussion of the case," to which counsel responded that it did not demonstrate that they had discussed the case. Based on counsel's legal opinion regarding this evidence [and] what it showed, Defendant contends, Defendant rejected the State's offer and proceeded to trial. Defendant argues that "counsel failed to correctly advise him in regards to the phone conversation between himself and Glenn, and, had counsel correctly informed him that the limited conversation constituted a legal discussion, [Defendant] would have accepted the plea offer instead of proceeding to trial. Had he pled guilty, he would have received a lesser sentence of five years as opposed to the thirty years he received after trial."

At the evidentiary hearing, Defendant's prior defense counsel testified that he reviewed the call with Defendant and did not advise him that this call did not amount to a discussion of the case, as Defendant alleges. Rather, counsel testified, he advised Defendant that this issue would be a question for the jury to determine if Defendant wished to proceed to trial. Counsel testified further that he discussed the strengths and weaknesses of Defendant's case as well as Defendant's exposure at trial, but that the ultimate decision of whether to reject the State's offer and proceed to trial was up to Defendant. Counsel also testified that Defendant believed he was not guilty of the charged offense, was adamant about proceeding to trial, and never expressed any interest in entering a plea. The Court finds this testimony to be credible, and finds that counsel cannot be deemed deficient under these circumstances. Additionally, after review of this testimony as well as Defendant's testimony — in which Defendant repeatedly expressed his belief he was not guilty of the offense and that he would not have accepted the State's offer of five years when he "didn't do anything" — this Court does not find there to be a reasonable probability that Defendant would not have proceeded to trial and would have entered a plea. For these reasons, the Court finds that counsel

cannot be deemed deficient as alleged, nor has Defendant demonstrated prejudice as a result of counsel's alleged deficiency. Consequently, Defendant warrants no relief on this allegation [ ].

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016) (citation and internal quotation marks omitted). "Federal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Nejad*, 830 F.3d at 1292 (citation and internal quotation marks omitted).

At the post-conviction evidentiary hearing, trial counsel testified that he advised Lanier that the jury would determine whether Lanier discussed Glenn's case with Glenn on the recorded telephone call (Respondent's Exhibit 6c at 462–66):

| | |
|---|---|
| [Prosecutor:] | Initially when, you know, in the initial part when you first met Mr. Lanier about this case, did he express to you his own opinion [or] belief about his innocence or his guilt? |
| [Trial counsel:] | Yes, he did. |
| [Prosecutor:] | Can you explain to the court about that? |
| [Trial counsel:] | Well, my recollection is that when I had spoken to Mr. Lanier about the case, his position all along was that when he spoke to Michael Glenn that he wanted [ ] to be on the visitation list so he could see [Mr. Glenn] at the jail and that his position was he didn't discuss the case with Mr. Glenn. He was saying that he just wanted to be put on the list so he can, you know, visit him because they were very, very close apparently. |

And that was the whole crux of the case for the jury to decide whether there was really a discussion about the case, were they discussing the case or was he, being Mr. Glenn, discussing the case with Mr. Lanier or was it Mr. Lanier discussing with Mr. Glenn and that was the ultimate issue for the jury to decide.

And so we listened to the CDs, we looked at the transcripts. In fact we actually blew up a demonstrative aid of the pertinent part of the discussions to use at the jury trial in front of Judge Holder. And so, I mean, that was — we had multiple discussions and office conferences regarding that.

[Prosecutor:]    How adamant, if you will, was Mr. Lanier about the fact that he was telling you that he did not discuss this case with Mr. Glenn?

[Trial counsel:]    He was very adamant. I mean, his position from the get-go, from day one was that it wasn't a discussion. He — it was Mr. Glenn discussing it. He just wanted to be on the visitation list and that he didn't feel he was guilty of this.

[Prosecutor:]    Did you ever advise Mr. Lanier that in your own opinion that Mr. Lanier was not discussing the case with Mr. Glenn?

[Trial counsel:]    No. My discussion with Mr. Lanier was that it's up to the jury to decide. I can't make that decision whether in fact he had discussions or not. That's why if there's reasonable doubt the jury would find him not guilty. On the other hand, obviously, if they felt that he did discuss that with Mr. Glenn then he could be found guilty.

So it's not my role as the attorney to tell him whether it was a discussion or not. I just give him the options and tell him

what the law is on it and what his
exposure is.

[Prosecutor:]      Did the defendant ever ask you and say,
hey, was this a discussion about the case?

[Trial counsel:]   Yeah, he asked me about it, but again, it
was the same answer I gave before. It's
not my position to make a finding
whether it was a discussion or not. It's
ultimately up to the jury and that's why
we — the strategy was that that's how
we're going to try to get reasonable doubt
and try to get a not guilty [verdict]. It
really hinged on whether it was a
discussion or not. That was — that was
the whole premise of the case.

. . .

[Prosecutor:]      Was it Mr. Lanier's idea or statement —
well, let me strike that, Judge. I'm sorry.
Who was it that came up with the opinion
of, I didn't discuss the case with Mr.
Glenn?

[Trial counsel:]   Well, when we — I guess when we were
waiting initially for the CD as far as the
audio recordings, I wanted to see what
actually transpired as far as the
conversation. And then when we sat
down and we listened to it and Mr. Lanier
and I went over that together, that's when
I started looking at the jury instructions
and looking what the State has to prove.

And then I was getting feedback from
him, okay, what's your position on this,
I mean, tell me what is going on in your
mind, what was — how would — how do
you characterize this conversation with
Mr. Glenn? And he said, I didn't have any
discussions. It's all about getting on the
visitation list and that was it.

So he — he was adamant that there was
no discussion about the materiality or the

actual case itself. He was just trying to get
on the visitation list. And that was his
position from the onset all the way
through trial.

Because the post-conviction court determined that trial counsel credibly

testified, trial counsel did not deficiently perform, and Lanier failed to demonstrate

a reasonable probability that he would have accepted the plea offer.  Consequently,

the post-conviction court did not unreasonably deny the claim.  *Lafler v. Cooper*,

566 U.S. 156, 163–64 (2012) ("[Where] [h]aving to stand [trial], not choosing to

waive it, is the prejudice alleged[,] . . . a defendant must show that but for the

ineffective advice of counsel there is a reasonable probability that the plea offer

would have been presented to the court (*i.e.*, that the defendant would have accepted

the plea and the prosecution would not have withdrawn it in light of intervening

circumstances), that the court would have accepted its terms, and that the conviction

or sentence, or both, under the offer's terms would have been less severe than under

the judgment and sentence that in fact were imposed."); *Osley v. United States*,

751 F.3d 1214, 1224 (11th Cir. 2014) ("Osley's claim that he would have pled guilty

had he been properly informed is also undermined by his repeated claims of

innocence."); *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) ("But

counsel owes a lesser duty to a client who pleads guilty than to one who decides to

go to trial, and in the former case counsel need only provide his client with an

understanding of the law in relation to the facts, so that the accused may make an

informed and conscious choice between accepting the prosecution's offer and going

to trial.").  Ground three is denied.

**Ground Four:**

Lanier asserts that trial counsel was ineffective for not objecting during trial to the admission of irrelevant and inflammatory evidence demonstrating his insulting behavior toward a woman named Georgia Peach.  (Doc. 1 at 10–11)  The post-conviction court denied the claim as follows (Respondent's Exhibit 6 at 78–81) (state court record citations omitted):

> . . . Defendant alleges ineffective assistance of counsel for failure to "make a precise contemporaneous objection to prosecutorial misconduct, which allowed irrelevant improperly admitted bad character evidence." Specifically, Defendant contends that, at trial, the State admitted into evidence irrelevant and highly-prejudicial testimony Defendant had given in Glenn's murder trial regarding Defendant's interaction with Georgia Peach. Defendant contends that his testimony regarding Georgia Peach in Glenn's trial was inflammatory, embarrassing, and unrelated to the perjury charge in Defendant's own case, warranting a contemporaneous objection by counsel. More specifically, Defendant contends that counsel had objected on the basis of relevancy and prejudice, [and] the court, at sidebar, overruled the objection because the testimony went toward Defendant's credibility, but noted that the questioning would end. When the questioning resumed, Defendant contends, and the State again focused on Defendant's tone and demeanor in Glenn's trial, counsel failed to make a timely objection on the basis of irrelevant character evidence.

> [T]he trial transcript reflects that the State cross-examined Defendant about his tone in Glenn's trial, and as part of this cross-examination, the State referenced Defendant's prior testimony about Georgia Peach:

> | [Prosecutor:] | "I'm pleading the Fifth, tada, tada, stutter." That's what you said, right? |
> |---|---|
> | [Lanier:] | Yeah. |
> | [Prosecutor:] | Did you say it in the tone of voice you said now? |

| | |
|---|---|
| [Lanier:] | Yeah, same way I come off and speak, yes, yes. |
| [Prosecutor:] | That wasn't with an attitude of being like "Did I stutter? Did I stutter?" |
| [Lanier:] | Didn't mean it like that. But I probably did. I was frustrated. |
| [Prosecutor:] | Let's talk about some more frustration you had . . . . [ ] the last question Mr. Covington asked you: "Isn't it a fact after Mr. Glenn committed this crime you told Georgia Peach to be quiet with your finger?" |
| [Lanier:] | Yes. |
| [Prosecutor:] | And you answered: "Hell, no." |
| [Lanier:] | Yes, ma'am. |
| [Prosecutor:] | Did you make that statement with the tone of voice that you're using now when you stated, "Hell, no?" How was the tone there? |
| [Lanier:] | The tone — the tone was — the tone — |
| [Trial counsel:] | I'm going to object to relevance. It's also beyond the scope, Your Honor. |
| [Judge:] | Overruled. You may answer, sir. |
| [Lanier:] | The tone was loud. He was trying say, like, I was threatening her or something. |
| [Prosecutor:] | You know Georgia Peach, right? |
| [Lanier:] | Huh? |

| [Prosecutor:] | You know Georgia Peach, right? |
|---|---|
| [Lanier:] | Yes. |
| [Prosecutor:] | All right. Next question, after he asked you that you told Georgia Peach to be quiet with your finger, your answer, "Hell, no." "Question: That didn't happen?" "Answer: Hell, no. I probably told her to suck my d*ck or something, I don't know, man." That's what you said, right? |
| [Trial counsel:] | Objection to relevancy and very prejudicial, Your Honor. I move to strike. |
| [Judge:] | Counsel, please approach. |

(The following proceedings ensued at the bench)

| [Judge:] | This is the trial testimony? |
|---|---|
| [Prosecutor:] | Absolutely, Judge. It's unbelievable when you read it. |
| [Trial counsel:] | She is trying to commit a character assassination. He's already admitted he's an eight-time convicted felon. |
| [Judge:] | Part of the defense is [Defendant] did not understand the questions by Mr. Covington. |
| [Prosecutor:] | The arguments go straight to his credibility in that regard, Judge. |
| [Judge:] | How much more of that do we have to hear? |
| [Prosecutor:] | That's pretty much it, Judge. |
| [Judge:] | Objection overruled. |

The Court finds that defense counsel raised proper objections, referencing the lack of relevancy of the testimony, the prejudicial nature of the testimony, and that the testimony amounts to bad character evidence, or "character assassination." The Court finds further that, in the testimony that followed, counsel raised additional objections to the State's questions of Defendant about his prior testimony. After review of the testimony, this Court does not believe yet another objection on the basis of "bad-character evidence" was warranted, as Defendant alleges. The Court believes counsel raised sufficient objections, which the trial court considered and overruled, and believes that the testimony that followed did not warrant an additional bad-character-evidence objection. Under these circumstances, counsel cannot be deemed deficient as alleged. Moreover, the Court does not find there to be a reasonable probability that the outcome of Defendant's trial would have been different had counsel raised an additional bad-character-evidence objection, and thus Defendant cannot demonstrate prejudice as a result of counsel's alleged deficiencies. For these reasons, Defendant warrants no relief on this allegation [ ].

When the prosecutor cross-examined Lanier about his earlier testimony concerning Georgia Peach, trial counsel objected, asserted that the earlier testimony was irrelevant and "very prejudicial," and moved to strike the prosecutor's reference to the earlier testimony.  (Respondent's Exhibit 1b at 284)  The trial judge summoned the attorneys to a bench conference outside the presence of the jury, and trial counsel further asserted (Respondent's Exhibit 1b at 284): "[The prosecutor] is trying to commit a character assassination.  He's already admitted he's an eight-time convicted felon."  Because trial counsel objected to the use of Lanier's earlier testimony concerning Georgia Peach for cross-examination, the record refutes Lanier's ineffective assistance of counsel claim.

Also, on cross-examination, Lanier testified that he asserted his right against self-incrimination under the Fifth Amendment because he did not understand the prosecutor's questions (Respondent's Exhibit 1b at 281):

> [Prosecutor:]   Why did you plead the Fifth?
>
> [Lanier:]   I plead the Fifth because I didn't really understand the question — how the question was really, you know, what — what it was he really was trying to get to. I didn't understand what he was trying [to] get to in the question, and when [Mr. Glenn] said plead the Fifth, I thought that this was something that could hurt — hurt — hurt his case or something, so I pled the Fifth.

At the bench conference, the prosecutor argued, and the trial judge agreed, that Lanier's earlier testimony concerning Georgia Peach was relevant to rebut Lanier's claim that he did not understand the prosecutor's questions. (Respondent's Exhibit 1b at 284)

Because Lanier "opened the door" to the admission of his earlier testimony concerning Georgia Peach for impeachment, an additional objection would not have succeeded, and the post-conviction court did not unreasonably deny the claim. *Dippolito v. State*, 275 So. 3d 653, 657 (Fla. 4th DCA 2019) ("As an evidentiary principle, the concept of 'opening the door' allows the admission of otherwise inadmissible testimony to 'qualify, explain, or limit' testimony or evidence previously admitted.") (citation omitted); *Russell v. State*, 269 So. 3d 621, 623 (Fla. 1st DCA 2019) ("[A] testifying defendant may open the door to impeachment with otherwise inadmissible collateral crime evidence by inaccurately testifying to

material facts.  To do so, the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled.") (citations and internal quotation marks omitted).

Lastly, after the bench conference, the prosecutor further cross-examined Lanier about his earlier testimony concerning Georgia Peach as follows (Respondent's Exhibit 1b at 285):

| | |
|---|---|
| [Prosecutor:] | Mr. Lanier, that was your statement, right? |
| [Lanier:] | Yes, ma'am. |
| [Prosecutor:] | That you felt confident enough to make that statement, right? |
| [Lanier:] | I didn't like what she did. |
| [Prosecutor:] | I'm sorry? |
| [Lanier:] | I didn't like what she did. |
| [Prosecutor:] | That's not my question. |
| [Lanier:] | Yes, ma'am. |
| [Prosecutor:] | My question was you felt confident enough to make that statement? |
| [Lanier:] | Yes. Yes, ma'am. |
| [Prosecutor:] | In a court of law like this? |
| [Lanier:] | I didn't really realize it, you know. Frustration just flying. The State would get mad, I would get mad, the judge would get mad, everybody was mad. It was chaos. |

Because these additional questions on cross-examination were relevant to rebut Lanier's claim that he did not understand the prosecutor's questions, and an

objection to the questions would not succeed, the post-conviction court did not unreasonably deny the claim.  Ground four is denied.

## VI.  CONCLUSION

Lanier's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Lanier and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Lanier fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate either the merits of the grounds or the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Lanier must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 28, 2023.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE